UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

MARY BETH HEINERT and RICHARD H.
SCHULTZ, JR., on behalf of themselves and
all others similarly situated,

                      DECISION AND ORDER

              Plaintiffs,

                      19-CV-6081L

            v.

BANK OF AMERICA, N.A., CITIZENS BANK, N.A.,
PERRY SANTILLO, CHRISTOPHER PARRIS,
DOMINIC SIWIK, PAUL ANTHONY LAROCCO,
JOHN PICCARRETO, and THOMAS BRENNER,

              Defendants.
_____

Plaintiffs bring this action on behalf of themselves and over 600 other investors, alleging that several individuals, assisted by employees of defendants Bank of America, N.A. ("Bank of America") and its successor, Citizens Bank, N.A. ("Citizens"), perpetrated a nearly decade-long Ponzi scheme by which the plaintiffs and other putative class members were defrauded of approximately 102 million dollars. (Dkt. #1). Familiarity with the underlying facts, summarized below, is presumed.

Bank of America and Citizens (hereafter, the "defendant banks") now move to dismiss plaintiffs' claims against them – specifically, aiding and abetting fraud, aiding and abetting breach of fiduciary duty, and common law conspiracy – for failure to state a claim pursuant to Fed. R. Civ. Proc. 12(b)(6). (Dkt. #17, #18). For the reasons set forth below, those motions are granted.

# FACTUAL HISTORY

In brief, plaintiffs allege that they were the victims of a Ponzi scheme orchestrated by the individual defendants, Perry Santillo ("Santillo"), Christopher Parris ("Parris"), Paul Anthony LaRocco ("LaRocco"), John Piccarreto ("Piccarreto"), Thomas Brenner ("Brenner"), and Dominic Siwik ("Siwik") (collectively, "individual defendants").[1] Plaintiffs allege that due to the personal and business banking relationships between the individual defendants and the defendant banks, the defendant banks are likewise liable for the fraudulent scheme.

The plaintiffs allege that in or about 2007 or 2008, several of the individual defendants converted a previously legitimate investment brokerage enterprise into a fraudulent scheme, by which they misused and misappropriated investor funds to pay off previous investors and to fund their own "jet-setting lifestyle." (Dkt. #1 at ¶2.) Plaintiffs contend that defendants, in facilitating the scheme, opened and transferred funds in and out of more than one hundred accounts at Bank of America, and twenty accounts at Citizens.

According to the complaint, some accounts at Bank of America were initially opened in 2005 due to individual defendant Parris's preexisting relationship with Rochester, New York branch manager Derline Cunningham ("Cunningham"). Plaintiffs allege that in the years that followed, Cunningham was a "key player" in the fraudulent scheme, coordinating the opening of new accounts, expediting the availability of funds, lying to creditors, and placing quarterly calls to American Express on Santillo's behalf, falsely confirming that his accounts held sufficient funds to cover his debts, when they did not. (Dkt. #1 at ¶¶4-6).

Plaintiffs contend that after Cunningham left Bank of America in 2016 to assume a branch manager position with Citizens, she directed the individual defendants to transfer their accounts to

---

[1] After the briefing and submission of the instant motion, plaintiffs voluntarily dismissed their claims against Siwik in this action. (Dkt. #43).

Citizens, under her management. There, she opened approximately twenty accounts for the individual defendants, and continued to engage in what the plaintiffs describe as "atypical" transactions and transfers on the individual defendants' behalf, to lift holds on large deposits, and to falsely represent to American Express that their accounts had sufficient funds. At some point after the individual defendants transferred their accounts to Citizens, Cunningham requested from them a "loan" of $40,000, which she was given and never repaid.

The Securities and Exchange Commission ("SEC") later conducted a fraud investigation and filed a civil enforcement action against Santillo, Parris, Piccarreto, LaRocco, and Brenner.

On June 25, 2018, plaintiffs commenced an action, based largely on the facts that underlie this matter, in the United States District Court for the Middle District of Florida. While motions to dismiss that action were pending, plaintiffs voluntarily discontinued the Florida action, and commenced the instant action here, on behalf of themselves and a proposed class of approximately 637 investors who were allegedly defrauded by the individual defendants.[2]

## DISCUSSION

### I. Standard on a Motion to Dismiss

In considering a motion to dismiss for failure to state a claim under Fed. R. Civ. Proc. 12(b)(6), the Court is limited to consideration of the facts stated in the complaint, as well as such materials as are attached thereto or incorporated by reference. *Yao-Yi v. Wilmington Trust Co.*, 301 F. Supp. 3d 403, 413 (W.D.N.Y. 2017). In considering the motion, the court accepts all factual allegations in the complaint and draws all reasonable inferences in plaintiffs' favor. To survive

---

[2] It is not entirely clear why plaintiffs elected to discontinue their Florida action when they did, although defendants suggest it was because the judge handling the motions to dismiss raised some significant concerns about the strength of plaintiffs' claims against the defendant banks.

dismissal, a complaint must set forth sufficient facts to "state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

With respect to claims of aiding and abetting fraud and/or aiding and abetting a breach of fiduciary duty sounding in fraud, the Second Circuit also applies the heightened pleading standard of Fed. R. Cir. Proc. 9(b), which requires that "the circumstances constituting fraud or mistake shall be stated with particularity." *See Lerner v. Fleet Bank, N.A.*, 459 F.3d 273 at 290 (2d Cir. 2006); *Yao-Yi*, 301 F. Supp. 3d 403 at 418; *Rosner v. Bank of China*, 2008 U.S. Dist. LEXIS 105984 at *10 (S.D.N.Y. 2008).

## II. Aiding and Abetting

Initially, plaintiffs allege that defendants Bank of America and Citizens aided and abetted the individual defendants in committing fraud and breach of fiduciary duty. (Dkt. #1 at ¶¶157-174).

### A. Fraud – Actual Knowledge

In order to plead a cause of action against a bank for aiding and abetting fraud committed by account-holders, a complainant must plausibly allege: (1) the existence of a fraud; (2) the defendant bank's knowledge of the fraud; and (3) that the defendant bank provided substantial assistance to advance the fraud's commission. *Lerner v. Fleet Bank. N.A.*, 459 F.3d 273, 292 (2d Cir. 2006).

With respect to the element of knowledge, plaintiffs must plausibly allege actual knowledge of the underlying fraud on the part of the defendant banks: constructive knowledge is *not* sufficient, nor is "a lower standard such as recklessness or willful blindness." *Rosner*, 2008 U.S. Dist. LEXIS 105984 at *22 (*quoting Pension Comm. Of Univ. of Montreal Pension Plan v.*

*Banc of Am. Sec., LLC*, 446 F. Supp. 2d 163, 202 n.279 (S.D.N.Y. 2006)). *See also In re Agape Litig. v. Cosmo*, 773 F. Supp. 2d 298, 308 (E.D.N.Y. 2011).

Here, the complaint alleges that Bank of America and Citizens had actual knowledge of the individual defendants' fraudulent actions, because: (1) frequent atypical transactions and suspicious activity took place by and between the individual defendants' accounts; (2) with respect to Bank of America, an internal investigation was made in 2014 during which Parris was questioned about a pattern of unusual transactions; and (3) Cunningham, in her capacity as a branch manager, made false statements to American Express concerning the individual defendants' account balances.

None of these allegations is sufficient to plausibly allege that either of the defendant banks had actual knowledge of the individual defendants' actions. Initially, the complained-of actions were undertaken exclusively by Cunningham, and plaintiffs make no allegation that the defendant banks were aware of Cunningham's role in a fraudulent scheme. *See generally In re Agape Litig.*, 773 F. Supp. 2d 298, 315 (close relationship between a bank employee and perpetrators of a Ponzi scheme is insufficient to give rise to an inference that the bank had actual knowledge of the scheme); *Renner v. Chase Manhattan Bank*, 2000 U.S. Dist. LEXIS 8552 at *34-*37 (S.D.N.Y. 2000) (fact that bank's branch manager had an ongoing relationship with fraudsters is insufficient to impute actual knowledge of the fraud to the bank, without allegations that the bank defendant had reason to believe that the bank manager was engaged in, or assisting, fraudulent conduct). Plaintiffs also do not specifically allege that Bank of America's internal investigation revealed, or otherwise placed Bank of America on notice, of the alleged fraudulent scheme.

It is well settled in the Second Circuit that a bank's negligent failure to identify warning signs of fraudulent activity, such as atypical transactions – even where such signs converge to form

a veritable "forest of red flags'" – is insufficient to impute actual knowledge of ongoing fraud. *See e.g.*, *Lerner*, 459 F.3d 273 at 292-94 (bank's knowledge of "red flags", i.e., that attorney's fiduciary accounts were frequently overdrawn and contained insufficient funds, and that attorney repeatedly transferred funds from fiduciary accounts to his own personal accounts, did not give the bank actual knowledge that the attorney was engaged in fraud); *Rosner* (collecting cases, and finding that allegations that a bank processed frequent atypical, non-routine transactions, and/or that it was aware of other fraudulent schemes similar to the one alleged, are insufficient to give rise to a "strong inference" of actual knowledge); *Yao-Yi*, 301 F. Supp. 3d 403 at 420 (allegations that a bank's managers had a close professional relationship with fraudsters, and that the bank was aware that a high volume of "atypical money transfers" were occurring between investor accounts, are insufficient to establish actual knowledge). *See also In re Agape Litig.*, 773 F. Supp. 2d 298 at 310 ("[w]here, as here, the defendant owes no independent duty to the Plaintiffs, even alleged ignorance of obvious warning signs of fraud will not suffice to adequately allege actual knowledge") (internal quotation marks omitted); *Chemtex, LLC v. St. Anthony Enters.*, 490 F. Supp. 2d 536, 546 (S.D.N.Y. 2007) ("when a defendant is under no independent duty, even alleged ignorance of obvious warning signs of fraud will not suffice to adequately allege 'actual knowledge'"). Similarly, allegations concerning a bank's willingness to "bend its rules" to accommodate influential customers by processing irregular transactions does not give rise to a "strong inference" of actual knowledge that those customers are engaged in fraud. *Rosner*, 2008 U.S. Dist. LEXIS 105984 at *37.

Plaintiffs also allege that the defendant banks gained actual knowledge of the alleged fraud due to Cunningham's negligent failure to identify the alleged fraud, and/or her alleged actions in furtherance of it. However, plaintiffs plead no facts detailing how Cunningham herself had actual

knowledge of the individual defendants' fraudulent activities. Plaintiffs allege only that Cunningham was aware of the individual defendants' "business model" in its infancy, *prior* to the alleged fraud, and that "based on her experience" assisting the individual defendants by facilitating irregular transactions at Bank of America, she would have become aware that their operations had changed into a fraudulent scheme. (Dkt. #1 at ¶164(a), ¶170(b)). That is not sufficient to establish knowledge of the individual defendants' Ponzi scheme.

In short, while plaintiffs' allegations clearly establish that Cunningham performed a series of atypical activities, willfully misrepresented the individual defendants' account balances to American Express, and demanded a loan from the individual defendants, plaintiffs' allegations provide no factual basis to establish that Cunningham had actual knowledge that she was assisting the individual defendants to perpetrate a fraudulent scheme. (Dkt. #1 at ¶92). *See generally Musalli Factory for Gold & Jewellry v. JP Morgan Chase Bank, N.A.*, 261 F.R.D. 13, 25 (S.D.N.Y. 2009) (allegations that bank employee acted suspiciously after a fraud was committed do not establish actual knowledge of the fraud at the time it took place). Plaintiffs allege, at most, constructive knowledge: that based on "red flags" including the irregular activities she was asked to engage in concerning the individual defendants' accounts, Cunningham could or should have surmised the fraudulent nature of the individual defendants' business.

Because plaintiffs fail to allege actual knowledge of the individual defendants' fraudulent activities on the part of either bank, plaintiffs have failed to state a claim against them for aiding and abetting fraud.

### B. Breach of Fiduciary Duty – Actual Knowledge

Plaintiffs also contend that the defendant banks aided and abetted the individual defendants in breaching their alleged fiduciary duties to the plaintiffs. They allege that the banks should have

7

known that the individual defendants' accounts contained investor funds, due to their (unspecified) account opening practices, and that Bank of America should have, at the very least, learned of the nature of the accounts during its internal investigation into some of them.

Generally, a bank has "no duty to monitor fiduciary accounts maintained at its branches in order to safeguard funds in those accounts from fiduciary misappropriation." *Home Savings of America, FSB v. Amoros*, 233 A.D.2d 35, 37 (N.Y. App. Div. 1st Dep't. 1997). *See also Lerner*, 459 F.3d 273 at 294; *In re Agape Litig.*, 773 F. Supp. 2d 298 at 325. Large banks hold myriad accounts for individuals and businesses, and are under no obligation to monitor or make an inquiry as to the nature or purpose of each account.

Thus, in order to state a claim against the defendant banks for aiding and abetting a breach of fiduciary duty, plaintiffs must plausibly allege: (1) a breach of fiduciary obligations to another; (2) that the defendant(s) knowingly induced or participated in the breach; and (3) that damages were suffered by plaintiffs as a result of the breach. *Lerner*, 459 F.3d 273 at 294. With respect to the second element of "knowing" inducement or participation, "[a]lthough a plaintiff is not required to allege that the aider and abettor had an intent to harm, there must be an allegation that such defendant had actual knowledge of the breach of duty." *Lerner*, 459 F.3d 273 at 294 (*quoting Kaufman v. Cohen*, 307 A.D.2d 113, 125 (N.Y. App. Div. 1st Dep't 2007). Only where a bank is "confronted with clear evidence indicating that [trust] funds are being mishandled" does a duty to safeguard those funds arise. *Lerner*, 459 F.3d 273 at 295.

It is well settled in this Circuit that a bank's due diligence or awareness of irregularities with respect to a fraudster's accounts is, without more, insufficient to give the bank knowledge of the underlying scheme. *In re Agape Litig.*, 773 F. Supp. 2d 298, 312-13 (allegations that bank conducted due diligence reviews of fraudster's activity and discovered improprieties are

8

insufficient to demonstrate actual knowledge, in the absence of allegations that the bank specifically learned of the fraudulent activity thereby: the bank's knowledge that the fraudster was "acting improperly in one capacity does not raise a strong inference that [the bank] had actual knowledge of the underlying fraudulent scheme").

Here, plaintiffs make no allegation that the defendant banks ever received or reviewed the offering materials given to investors, or that they were otherwise "confronted with clear evidence" that the accounts at issue contained investor funds. Even assuming *arguendo* that each institution's "account opening practices" would, as plaintiffs allege, have alerted the defendant banks to the fact that the accounts at issue were comprised of investor funds, there is no indication that the defendant banks had actual notice that the individual defendants were in breach of their own fiduciary obligations, or were using their accounts to perpetrate fraud. Again, the banks had no duty, and no right, to explore the source of monies deposited by their accountholders. As such, plaintiffs' aiding and abetting breach of fiduciary duty claims must be dismissed.

### C. Fraud and Breach of Fiduciary Duty – Substantial Assistance

Even assuming *arguendo* that plaintiffs had sufficiently alleged actual knowledge on the part of the defendant banks on one or both of their aiding and abetting claims, plaintiffs have failed to plausibly allege that the defendant banks committed any affirmative acts, and/or provided substantial assistance to the individual defendants, in carrying out a fraudulent scheme or breach of fiduciary duty. Substantial assistance takes place when a defendant "affirmatively assists, helps conceal, or by virtue of failing to act when required to do so enables the fraud to proceed," and "the actions of the aider/abettor proximately caused the harm on which the primary liability is predicated." *Cromer Fin. Ltd. v. Berger*, 137 F. Supp. 2d 452, 470 (S.D.N.Y. 2001). *See also Rosner*, 2008 U.S. Dist. LEXIS 105984 at *38-*42.

Here, plaintiffs allege that the defendant banks "assisted" the individual defendants by providing banking services, including making wire transfers, opening accounts, and clearing account holds. Such routine matters, even where they are performed with "atypical" frequency, are insufficient to support an aiding and abetting claim. *See Rosner*, 2008 U.S. Dist. LEXIS 105984 at *41 (allegations that a bank engaged in "atypical and non-routine" account openings, fund transfers, and withdrawals, are insufficient to allege substantial assistance as a matter of law). *See generally Renner*, 2000 U.S. Dist. LEXIS 8552 at *37 ("[t]he mere fact that . . . participants in the alleged scheme used accounts at [a defendant bank] to perpetrate it, without more, does not rise to the level of substantial assistance necessary to state a claim for aiding and abetting liability," even where activities undertaken by a branch manager in alleged furtherance of the scheme were "questionable").

To the extent plaintiffs contend that Cunningham's misrepresentations to American Express assisted the individual defendants' scheme, plaintiffs do not allege any causal connection between Cunningham's deceptive statements, and the harm to investors. Plaintiffs' invitation to the Court to *assume* that Cunningham's misstatements must have been the lynchpin of the individual defendants' scheme, without which they would have had no other access to funding and could not have continued to defraud investors, is simply too speculative and conclusory to rise to the level of plausibility.

In any event, the defendant banks owed no independent fiduciary duty to the plaintiffs. As the Second Circuit has observed, "banks do not owe non-customers a duty to protect them from the intentional torts of their customers . . . With billions of banking transactions occurring in New York alone, this would be the equivalent of making New York banks liable to the world's banking public." *Lerner*, 459 F.3d 273 at 286-87.

For these reasons, plaintiffs have failed to state a claim against the defendant banks for aiding and abetting fraud or breach of fiduciary duty, and those claims must be dismissed.

### III. Common Law Conspiracy

Plaintiffs also allege that the defendant banks conspired with the individual defendants to defraud the plaintiffs.

In order to state a claim for common law conspiracy, plaintiffs must allege that the defendant banks: (1) entered into a corrupt agreement; (2) committed an overt act in furtherance of that agreement; and (3) caused damages thereby. *Kashi v. Gratsos*, 790 F.2d 1050, 1055 (2d Cir. 1986).

Initially, plaintiffs have not alleged any specific, corrupt agreement by and between the defendant banks and any of the individual defendants. As discussed above, plaintiffs have not pled that the defendant banks had actual knowledge of the individual defendants' fraudulent activities, let alone that they agreed to assist them. Plaintiffs likewise have not alleged that the banks committed overt acts in furtherance of the individual defendants' fraud – rather, plaintiffs allege only that the banks acted in a manner that enabled, or failed to recognize or prevent, the fraud. These allegations, which concern inaction rather than overt acts, are insufficient to establish a conspiracy to defraud. *See Ritchie Capital Mgmt., LLC v. Gen. Elec. Capital Corp.*, 121 F. Supp. 3d 321, 339 (S.D.N.Y. 2015).

To the extent that plaintiffs have alleged that Cunningham engaged in overt acts which assisted the conspiracy, plaintiffs have not alleged that Cunningham did so due to any specific, knowing agreement with the individual defendants, or that she acted in order to further such an agreement (rather than simply to assist her clients, preserve a relationship with them, and/or enrich herself).

Because plaintiffs have failed to plausibly allege that the defendant banks and individual defendants had an agreement to engage in fraud, or that the defendant banks took overt actions in furtherance of that agreement, plaintiffs' conspiracy claims must be dismissed.

## CONCLUSION

For the foregoing reasons, the motions by defendants Bank of America and Citizens Bank to dismiss the claims against them (Dkt. #17, #18) are granted. Plaintiffs' claims against Bank of America and Citizens Bank are hereby dismissed in their entirety, with prejudice.

IT IS SO ORDERED.

_____
DAVID G. LARIMER
United States District Judge

Dated: Rochester, New York
October 18, 2019.